Filed 10/28/15  In re A.L. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.L. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. YESENIA A. et al., Defendants and Appellants. | D068257 (Super. Ct. No. J516640D-F) |

APPEAL from orders of the Superior Court of San Diego County, Kimberlee Lagotta, Judge.  Affirmed.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant Yesenia A.

Jamie M. Moran, under appointment by the Court of Appeal, for Defendant and Appellant Maurice L.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Jennifer M. Stone for Plaintiff and Respondent.

Yesenia A. and Maurice L. appeal orders declaring their minor children A.L., J.L. and N.L. (together, the minors) dependents of the juvenile court under Welfare and Institutions Code section 300, subdivision (b)(1) (all statutory references are to the Welfare and Institutions Code), and removing the minors from their custody. Yesenia and Maurice challenge the sufficiency of the evidence supporting the court's jurisdictional and dispositional orders. Maurice also challenges the court's denial of his request to continue the jurisdictional and dispositional hearing. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

Yesenia has a long history of involvement with the San Diego County Health and Human Services Agency (Agency). In 2007, her three older children were taken into protective custody when she was arrested on charges related to methamphetamine use. At the time of her arrest, the police reported the family's home was "grossly inappropriate for the three young children." Police found hypodermic needles, the home's bedrooms were stacked "knee high" with debris and cockroaches infested the premises. Yesenia failed to reunify with her older children and her parental rights to them were terminated in 2009. The minors were adopted by their maternal grandmother.

In March 2015, the Agency received a referral alleging neglect and sexual abuse. At the time of the referral, Maurice, Yesenia and the three children who are the subject of this proceeding were living with the maternal grandmother and Yesenia's three older children. The referral alleged a drug dealer was sexually abusing one of the three older children, a 12-year-old girl, in exchange for drugs. The day after it received the referral, an Agency social worker interviewed Yesenia and Maurice at the maternal grandmother's

2

home.  Yesenia vehemently denied the 12-year-old was being sexually abused.  She and Maurice, however, admitted daily methamphetamine use and that they had at times been under the influence of the drug while caring for their three young children, five-year-old A.L., three-year-old J.L. and eight-month-old N.L.

Yesenia told the social worker that she and Maurice had smoked methamphetamine nightly since N.L. was three months old.  Yesenia and Maurice reported they snuck out of the maternal grandmother's house each night after midnight to use drugs and returned early the next morning.  The maternal grandmother would go to work in the morning, leaving Yesenia and Maurice, who were under the influence of methamphetamines, to care for their three young children without any other adult present.  Yesenia also reported she had been arrested the prior month for failing to complete drug treatment services required as a result of an earlier drug-related arrest.  Yesenia was not permitted to leave San Diego and was facing deportation because of the arrest.  Yesenia and Maurice entered a safety plan with the Agency, agreeing not to care for the minors alone and to enroll in drug treatment programs pending the completion of the Agency's investigation.

Ten days later, Yesenia told the Agency's social worker she had not yet enrolled in drug treatment but was planning on looking into services that day.  On the call, Yesenia slurred her speech and was difficult to understand.  She admitted to smoking methamphetamine two days before.  The social worker also spoke to Maurice, who had not pursued drug treatment and acted confused about the last time he used drugs.  As a result, the Agency filed petitions on behalf of the minors under section 300, subdivision

3

(b)(1). The petitions alleged Yesenia and Maurice used methamphetamines daily and were under the influence of the drug while caring for the minors. The petition also noted Yesenia was on probation and facing deportation, and that her parental rights to her three older children had been terminated as result of her substance abuse.

The juvenile court issued protective custody warrants for the minors. The Agency's report for the detention hearing stated concern that both the maternal and paternal grandparents were aware of the parents' history of drug abuse, but failed to recognize the parents were using methamphetamine and caring for the minors while under the influence. At the detention hearing, the court found the Agency made a prima facie showing that the minors were described by section 300, subdivision (b)(1), and made reasonable efforts to prevent the need for removal of the children from the parents' custody. The court ordered the minors detained in the home of their paternal grandmother and liberal supervised visitation for Yesenia and Maurice. The court also ordered the maternal grandmother's house assessed for placement.

Before the jurisdictional and dispositional hearing, the Agency's social worker privately interviewed Yesenia and Maurice. During her interview, Yesenia admitted a long history of drug abuse, and that she had used methamphetamine just three days earlier. Yesenia denied that her drug use posed a danger to her children's well-being. She was fixated on the children's placement with the paternal grandmother. Maurice also admitted a long history of drug abuse, and that he had used methamphetamine just a few days before the interview. The parents both stated they had started the enrollment process for a drug treatment program.

4

In its report for the initial jurisdictional and disposition hearing, the Agency recommended Yesenia and Maurice be provided with reunification services. At the hearing, the parents challenged the court's jurisdiction and placement with the paternal grandmother and the court set the matter for an evidentiary hearing. Thereafter, the Agency reported that Yesenia and Maurice both failed to show for two drug tests, and Yesenia missed a scheduled appointment with a drug treatment provider and failed to follow through on the program's enrollment requirements. (Yesenia did complete the intake process for the drug treatment program before the evidentiary hearing and started to attend Narcotics Anonymous meetings.) The Agency also reported that at a team decision making meeting it facilitated for purposes of visitation planning, Maurice was verbally abusive to the family's social worker. In the time period before the hearing, Maurice did not respond to any of the social worker's inquiries about his drug treatment status and failed to provide the Agency with other information it requested.

At the evidentiary hearing, the juvenile court granted the Agency's request for judicial notice of the documents in Yesenia's earlier dependency proceeding showing the termination of her parental rights to her three older children as a result of her drug abuse. The juvenile court denied Maurice's request to continue the hearing until after the Agency completed its assessment of the maternal grandmother's home for placement. At the hearing, the two social workers involved in the case testified about the dangers associated with caring for young children, like the minors, who are totally dependent on their caregivers, while under the influence of methamphetamines. Yesenia also testified and stated she never intentionally put her children at risk. However, she admitted her long

5

history of substance abuse, and that her use of drugs negatively impacted her ability to care for the minors. In their closing arguments, counsel for Yesenia and Maurice argued jurisdiction was not proper because the Agency failed to show a risk of harm to the minors. Both also requested the minors be placed in the care of the maternal grandmother in the event the court concluded it had jurisdiction.

At the conclusion of the hearing, the juvenile court found by clear and convincing evidence that the allegations in the petitions were true and the children were described by section 300, subdivision (b)(1). The court pointed to the parents' lengthy histories of substance abuse, Yesenia's prior unsuccessful dependency proceeding, and the very young age of the minors in support of its conclusion the minors were at substantial risk of harm from the parents' drug use. The court ordered continued placement with the paternal grandmother and directed the Agency to continue to evaluate the maternal grandmother for placement. The juvenile court ordered reunification services for both parents.

DISCUSSION

I

On appeal, Yesenia and Maurice assert insufficient evidence supported the court's jurisdictional finding under section 300, subdivision (b)(1), because there was no evidence the minors suffered any actual harm and their drug use alone did not warrant intervention.

6

A

In reviewing the sufficiency of the evidence on appeal, we consider the entire record to determine whether substantial evidence supports the juvenile court's findings. We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Rather, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if other evidence supports a contrary finding. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.) The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the order. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Section 300, subdivision (b)(1) provides a basis for juvenile court jurisdiction if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness as a result of the parent's failure to adequately supervise or protect the child or provide adequate medical treatment. In enacting section 300, the Legislature intended to protect children who are currently being abused or neglected, "and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2.) The Legislature emphasized that a child's well-being depends on a "home environment free from the negative effects of substance abuse . . . ." (*Ibid.*) In this regard, the court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194-196.) Further, the court may consider past events when

determining whether a child presently needs the juvenile court's protection. (*In re Diamond H*. (2000) 82 Cal.App.4th 1127, 1135.)

The age of the children is a critical fact in determining the risk of serious physical harm in cases involving drug use. (See *In re Destiny S*. (2012) 210 Cal.App.4th 999, 1004 (*Destiny S*.) [noting 11-year-old was "old enough to avoid the kinds of physical dangers which make infancy an inherently hazardous period of life"]; *In re Rocco M*. (1991) 1 Cal.App.4th 814, 825 (*Rocco M*.) [same].) When the dependency proceeding involves a child "of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety . . . a finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M*. (2012) 211 Cal.App.4th 754, 767 (*Drake M*.).

B

As the Agency asserts, there was overwhelming evidence in this case to support the juvenile court's findings that the minors faced a substantial risk of serious harm if left in the care of Yesenia and Maurice. Both parents admitted to the Agency's social workers that they cared for their very young children, ages five, three and eight months, while under the influence of methamphetamine, and that they used the drug on a daily basis for six months before the Agency intervened. At the contested jurisdictional hearing, the social workers testified at length about the serious impairment caused by use of the drug, including lack of alertness, aggression and paranoia. One of the social workers also testified about the negative side effects after the drug's high has worn off.

8

She noted users are prone to sleep for "days on end" and are often "depressed and unable to provide regular care for themselves or anybody else."

In asserting that the use of methamphetamine alone was not sufficient evidence of a risk of harm, Yesenia ignores an important distinction between this case and those she relies on. The minors in *In re Rebecca C.* (2014) 228 Cal.App.4th 720 (*Rebecca C.*) and in *Destiny S.*, were not very young children who required constant care and supervision. *Rebecca C.* involved a teenager and *Destiny S.* an 11-year-old child. There is no question that a child's age is essential in determining the risk of harm that is created by a parent's drug use. (See *Rocco M., supra*, 1 Cal.App.4th at p. 824 [lack of adequate supervision in cases involving "children of tender years . . . poses an inherent risk to their physical health and safety"].)

Unlike the minors in *Rebecca C.* and *Destiny S.*, the children here were completely reliant on their caregivers to meet their needs. Because of this total reliance, there was a substantial risk they would be harmed if left in the care of parents under the influence of methamphetamine. Yesenia admitted she was not herself while under the influence, that it was "not good" for her to care for the minors while coming down from methamphetamine, and that she was "not able to do as much for them as she could if" she were not under the influence of the drug.

Further, Yesenia's 14-year history of substance abuse, her failure to reunify with her older children as a result of drug abuse, and the possible deportation she faced as a result of drug-related criminal charges also supported the juvenile court's finding that the children were at substantial risk of harm. In addition, Yesenia and Maurice failed to

9

obtain treatment after entering a safety plan with the Agency and did not show up for drug testing. While Yesenia did take some preliminary steps to obtain treatment prior to the jurisdictional and disposition hearing, Yesenia's history showed relapse was a very real possibility and this first step did not negate the risks created by her earlier conduct.

Maurice's reliance on *In re Alexis E.* (2009) 171 Cal.App.4th 438, and *Drake M., supra*, 211 Cal.App.4th 754, to support his assertion the juvenile court improperly relied on drug use alone to find jurisdiction here is also misplaced. *In re Alexis E.* stated the legal use of marijuana for medical purposes alone would not be sufficient to support jurisdiction. The court, however, concluded the father's use of marijuana, illegally and later as a prescribed medication, *was* a factor supporting the juvenile court's finding that the minors were harmed by the father's drug use. (*In re Alexis E.*, at pp. 452-453.)

In *Drake M., supra*, 211 Cal.App.4th 754, the court of appeal concluded jurisdiction was not supported by the evidence before the juvenile court. The evidence showed the father used marijuana legally to treat chronic arthritis caused by many years of work as a cement mason, he never smoked marijuana in the presence of his 14-month-old son, and never cared for his son while under the influence. (*Id.* at pp. 760-761.) The Department of Child and Family Services "reported that father had been employed for many years and 'appear[ed] capable of providing for the child['s] basic needs.' " (*Id.* at p. 767.) The father's legal use of marijuana to treat arthritis in *Drake M.* is not comparable to Yesenia's and Maurice's admitted use of methamphetamine on a daily basis immediately before caring for their three young children. In sum, the facts before

the juvenile court amply supported its findings that the minors here were described by section 300, subdivision (b)(1).

## II

Yesenia and Maurice next contend insufficient evidence supported the removal of the minors from their custody. The contention is also without merit. Generally, a dependent child will not be removed from the home without clear and convincing evidence the child cannot safely remain there. (§ 361, subd. (c)(1).) Although the bias of the statute is on family preservation, not removal (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146), " ' "[t]he parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child." [Citation.] The court may consider a parent's past conduct as well as present circumstances.' " (*In re John M.* (2012) 212 Cal.App.4th 1117, 1126.)

The juvenile court's jurisdictional findings represent "prima facie evidence the child cannot safely remain in the home." (*In re Hailey T., supra*, 212 Cal.App.4th at p. 146.) Although the juvenile court's findings must be made on clear and convincing evidence, "[o]n review, we employ the substantial evidence test, however bearing in mind the heightened burden of proof." (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.) We consider the entire record to determine whether substantial evidence supports the juvenile court's findings. (*Ibid*.)

The removal order in this case is supported by evidence that there was a substantial danger or risk of danger to the minors' safety if returned to Yesenia's and Maurice's care. The evidence that supported the court's jurisdictional order also

11

supported its placement determination. Yesenia had only begun to address her long-standing substance abuse and, at best, had been sober for less than two months at the time of the jurisdictional and disposition hearing. There was no evidence Maurice had taken any steps to address his own long-standing drug problem and Yesenia reported that, although she and Maurice were each other's triggers for drug abuse, they planned to stay together.

Yesenia also asserts the juvenile court should have allowed the children to remain in her mother's home, "with intensive services and protective orders in place." We disagree. The juvenile court's concern that the maternal grandmother could not adequately supervise the minors was appropriate in light of her failure to do so in the past. Here, as discussed with respect to the juvenile court's jurisdictional finding, there was ample evidence demonstrating an "identified, specific hazard" and that the children were "of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety." (*Rocco M., supra*, 1 Cal.App.4th at p. 824.)

Before the minors were removed from the maternal grandmother's home, Yesenia and Maurice entered into a safety plan that required them to seek treatment and not be left alone with the minors. This did not occur. The juvenile court reasonably concluded that continued placement in the home of the maternal grandmother while the parents continued living there was not a viable option. Substantial evidence supported the juvenile court's finding by clear and convincing evidence that removal from the maternal

12

grandmother's home was the only way to protect the minors, and that doing so was in their best interests.

## III

Lastly, Maurice asserts the court erred by denying his request to continue the jurisdictional and dispositional hearing to allow the Agency to first complete its evaluation of the maternal grandmother's home for placement. He contends addressing a change in placement later by a petition under section 388 would improperly turn the dispositional process on its head.

Under section 352, the juvenile court may grant a continuance of any hearing only on a showing of good cause and only if the continuance is not contrary to a minor's best interests. In considering the minor's interests, the court must "give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a); *In re Ninfa S.* (1998) 62 Cal.App.4th 808, 810.) Because "time is of the essence" for dependent children, continuances in juvenile cases are discouraged. (*In re Josiah Z.* (2005) 36 Cal.4th 664, 674; *Jeff M. v. Superior Court* (1997) 56 Cal.App.4th 1238, 1242.) We reverse an order denying a continuance only on a showing of an abuse of discretion. (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 605; *In re Elijah V.* (2005) 127 Cal.App.4th 576, 585.)

We see no abuse of discretion in the juvenile court's denial of Maurice's request for a continuance. There is no question additional delay was not in the best interest of these young children. (See *In re Sean E.* (1992) 3 Cal.App.4th 1594, 1597 [" '[D]elay

13

disserves the interests of the minor, the parents, and the courts, and is clearly inconsistent with the intent of the Legislature.' "].) The court was appropriately concerned with ordering the children to return to the maternal grandmother's home without the completion of the Agency's evaluation. The Agency's social worker testified she was concerned about the grandmother's ability to protect the minors because she failed to detect that the parents were using methamphetamine regularly and did not prevent the parents from caring for the minors alone while under the influence. It was also not clear when the Agency's evaluation would be complete. A continuance, therefore, would have kept the minors' placement in a state of uncertainty for an additional unknown amount of time. Under these facts and the deferential standard of review that binds us, we conclude the juvenile court did not err by denying Maurice's request.

Lastly, the record does not support Maurice's contention that the juvenile court improperly denied his continuance request on the ground that it could later be addressed through a section 388 petition for modification. In response to the request for a continuance, the minors' counsel raised the availability of later litigating the placement through a section 388 petition. Yesenia's counsel then joined Maurice's request for a continuance and argued a section 388 petition was not a good alternative to a continuance because it would take three months to be heard by the court. The juvenile court corrected this assertion, noting such a petition would generally be heard within two weeks, but then made its ruling based on the best interests of the minors. The court noted the children were detained with a family member in a safe environment and that Maurice and Yesenia

14

had not shown delaying the disposition order was in the minors' best interest.  We see no abuse of discretion in the court's denial of a continuance under section 352.

DISPOSITION

The orders are affirmed.

McINTYRE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

PRAGER, J.*

---

*    Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.